IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. __2:25cr 102-MHT-JTA__ |
| | ) | |
| HASAN JERMEL PULLIAM | ) | [18 U.S.C. § 1347; |
| | ) | 18 U.S.C. 1028A] |
| | ) | |
| | ) | INDICTMENT |

2025 FEB 12 P 12: 55

U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

The Grand Jury charges:

INTRODUCTION

During all times relevant to this Indictment:

1.    Medicaid was a federally-assisted grant program for the states. Medicaid enabled the states to provide medical assistance to low-income adults and children (Medicaid "beneficiaries" or "recipients"). Each State directly paid the providers of Medicaid services, with the state obtaining the federal share of the payment from the United States Treasury. As a result, Medicaid was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

2.    The State of Alabama, through the Alabama Medicaid Agency ("Alabama Medicaid") participated in the Medicaid program. Alabama Medicaid was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

3.    A provider who provided services to a Medicaid beneficiary was required to enroll in Alabama Medicaid. Enrolled providers in Alabama Medicaid were eligible for reimbursement for medically necessary covered services through Alabama Medicaid.

4.    Enrolled providers submitted their claims for services provided to Medicaid beneficiaries to Alabama Medicaid via an online portal. Providers could also contract with a biller to handle the processing of the claims they submitted to Alabama Medicaid for reimbursement. Once a claim was submitted and processed, Medicaid would deposit payment for that claim into

the provider's account.

5.    Alabama Medicaid was headquartered in Montgomery, Alabama. Alabama Medicaid used a service known as Gainwell Technologies to process Medicaid claims and reimbursement. All Medicaid claims reimbursement payments were routed through Gainwell Technologies, which was also located in Montgomery, Alabama, within the Middle District of Alabama.

6.    Hasan Jermel Pulliam was a licensed professional counselor and held himself out as a provider who specialized in counseling children and families and accepted Medicaid.

COUNTS 1–5
(Health Care Fraud)

7.    The factual allegations contained in paragraphs 1 through 6 are realleged and incorporated herein as if copied verbatim.

8.    From an unknown date until in or about November 2023, within the Middle District of Alabama, and elsewhere, the defendant,

HASAN JERMEL PULLIAM,

knowingly and willfully executed and attempted to execute a scheme to defraud, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned and under the custody and control of health care benefit programs, as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services. The scheme and artifice is set forth below.

MANNER AND MEANS

9.    The defendant held himself out as a provider who accepted Medicaid so that other medical providers would refer patients to him.

10.    Patient referrals included the beneficiary's name, date of birth, and Medicaid Recipient identification number.

2

11. After receiving a referral from another provider or otherwise obtaining the beneficiary's identifying information, the defendant used the beneficiary's identifying information, including the beneficiary's name, date of birth, and Medicaid Recipient identification number, to submit claims through a third-party biller to Medicaid, even though he had never provided any services to the beneficiary or even, in some instances, met the beneficiary.

12. In submitting these claims, the defendant typically used two procedure codes to bill Medicaid: 90847, for 50 minutes of family psychotherapy with patient present; and 90837, for 60 minutes of individual face to face psychotherapy with the patient. The defendant would also bill for a diagnostic evaluation (procedure code 90791) when he began his fraudulent billing.

13. The claims were submitted in batches, including claims relating to multiple visits for multiple patients. Alabama Medicaid would issue a check for all the claims submitted in the previous batch.

14. On or about April 25, 2019, a referring physician referred the parent of then six-month old J.C. (born in November of 2018) to Pulliam for counseling.

15. From in or about April 2019 through in or about August 14, 2021, Pulliam submitted claims for individual and family counseling sessions with infant J.C. and J.C.'s parents, with claims totaling $15,090.32. None of these alleged counseling sessions ever took place.

16. In doing so, Pulliam used J.C.'s identifying information, including the beneficiary's name, date of birth, and Medicaid Recipient identification number, to submit the claims.

17. From in or about January 2021 through in or about January 2023, Pulliam submitted claims for individual and family counseling sessions with minor L.P., with claims totaling $12,340.88. None of these alleged counseling sessions ever took place.

18. In doing so, Pulliam used L.P.'s identifying information, including the beneficiary's name, date of birth, and Medicaid Recipient identification number, to submit the

claims.

19.     From in or about January 2021 through in or about July 2023, Pulliam submitted claims for individual and family counseling sessions with minor K.D., with claims totaling $15,785.50. None of these alleged counseling sessions ever took place.

20.     In doing so, Pulliam used K.D.'s identifying information, including the beneficiary's name, date of birth, and Medicaid Recipient identification number, to submit the claims.

21.     From in or about February 2021 through in or about October 2023, Pulliam submitted claims for individual and family counseling sessions with minor K.B., with claims totaling $17,169.16. None of these alleged counseling sessions ever took place.

22.     In doing so, Pulliam used K.B.'s identifying information, including the beneficiary's name, date of birth, and Medicaid Recipient identification number, to submit the claims.

23.     From in or about January 2020 through in or about November 2023, Pulliam submitted claims for individual and family counseling sessions with minor W.C., with claims totaling $24,728.70. None of these alleged counseling sessions ever took place.

24.     In doing so, Pulliam used W.C.'s identifying information, including the beneficiary's name, date of birth, and Medicaid Recipient identification number, to submit the claims.

25.     These claims submitted to Medicaid caused Medicaid to issue payment to the defendant, which Medicaid would never have submitted if it knew the defendant had not provided any services to the beneficiaries.

## THE CHARGES

26.     The factual allegations contained in paragraphs 1 through 25 are realleged and

4

incorporated herein as if copied verbatim.

27.    From an unknown date until in or about November 2023, within the Middle District of Alabama, and elsewhere, the defendant,

HASAN JERMEL PULLIAM,

knowingly and willfully executed and attempted to execute a scheme to defraud, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned and under the custody and control of health care benefit programs, as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, as set forth in the chart below with each payment giving rise to a separate count:

| Count | Patient/Victim | On or about Date of Alleged Service | On or About Date of Claim Payment |
|---|---|---|---|
| 1 | J.C. | 08/07/2021; 08/14/2021 | 08/20/2021 |
| 2 | L.P. | 01/11/2023; 01/19/2023 | 01/20/2023 |
| 3 | K.D. | 06/21/2023; 06/28/2023 | 07/07/2023 |
| 4 | K.B. | 10/01/2023;   10/08/2023; 10/15/2023 | 10/20/2023 |
| 5 | W.C | 10/30/2023; 11/06/2023 | 11/10/2023 |

All in violation of Title 18, United States Code, Section 1347.

## COUNTS 6–10
### (Aggravated Identity Theft)

28.     From an unknown date until in or about November 2023, in Montgomery County, in the Middle District of Alabama, the defendant,

### HASAN JERMEL PULLIAM,

knowingly, used, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit health care fraud, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1), with each giving rise to a separate count:

| Count | Related Felony Charge | Victim | On or about Dates |
|---|---|---|---|
| 6 | Count 1 | J.C | 08/20/2021 |
| 7 | Count 2 | L.P. | 01/20/2023 |
| 8 | Count 3 | K.D. | 07/07/2023 |
| 9 | Count 4 | K.B. | 10/20/2023 |
| 10 | Count 5 | W.C. | 11/10/2023 |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

### FORFEITURE ALLEGATION

A.      The allegations contained in Counts 1-5 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(7).

B.      Upon conviction of the offenses in violation of Title 18, United States Code, Section 1347, set forth in Counts 1-5 of this indictment, the defendant,

6

HASAN JERMEL PULLIAM,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. The property includes but is not limited to a forfeiture money judgment.

C.    If any of the property described in this forfeiture allegation, as a result of any act or omission of the defendant:

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred or sold to, or deposited with, a third party;

(3)    has been placed beyond the jurisdiction of the court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 982(a)(7).

A TRUE BILL:

_____
Foreperson

_____
KEVIN P. DAVIDSON
ACTING UNITED STATES ATTORNEY

_____
Joel Feil
Assistant United States Attorney

7

Russell T. Duraski
Assistant United States Attorney